UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

)
)
)
IN RE SEARCH WARRANT NO. 5165    )                NO. 5:20-MJ-5165
)
)
)
)

## MEMORANDUM OPINION

Modern day biometric authentication features for electronic devices allow once trivial gestures, such as a momentary stare or touch, to be the barrier between the outside world and an individual's most intimate, private details. The United States has applied for a search warrant requesting, in part, to compel any individuals present during a search warrant execution to provide biometrics in order to access seized electronic devices. The Court is now tasked with determining if such compulsion is constitutional and, if so, to whom and what degree it can be applied. In the end, the Court holds that while requests for compelled biometrics is permitted under the Fourth and Fifth Amendment, the Court strikes the biometric request at issue because it fails to address Fourth Amendment concerns set forth below.

## I.    BACKGROUND

This matter is before the Court on the United States' application for a search warrant ("Search Warrant")[1] seeking to search a premises in the Eastern District of Kentucky, Central Division, belonging to an individual ("Target") and to seize, among other things, evidence on

---

[1] The Search Warrant includes the search warrant application, the affidavit in support of the search warrant, and attachments A and B to the search warrant application.

1

cellphones, computers, and other electronic devices found on the premises ("Premises") which may contain evidence of violations of 18 U.S.C. § 2252A.  The Search Warrant is sufficiently particularized and establishes probable cause to believe that: (1) the Premises to be searched belong to the Target; (2) electronic devices of the Target will be found on the Premises; and (3) the electronic devices contain evidence of, or were the instrumentalities of, the alleged crime.  The Search Warrant is also particular as to the categories of information sought from the electronic devices.

The Search Warrant also seeks authorization from the Court to "permit[] law enforcement to compel all individuals present at the [Premises] to unlock any [electronic devices] requiring biometric access subject to seizure pursuant to this warrant."  Biometrics are a set of unique physical features that make you distinctly identifiable, such as your fingerprint, facial features, or iris demarcations.  For electronic devices, biometrics are used as security measures to verify that you are you.  For example, Apple devices previously used Touch ID (fingerprints) and now use Face ID (facial recognition) to unlock or decrypt a device.[2]  Biometrics are fast replacing traditional alphanumeric passcodes where a user enters a sequence of letters, numbers, and/or symbols to unlock devices.  Here, the Search Warrant seeks to compel anyone present during the execution of the search warrant to use their biometrics to unlock any electronic device on the Premises, including the use of fingerprints, facial recognition, and iris scans.

---

[2] The Search Warrant only seeks to compel biometrics to unlock electronic devices.  Thus, the Court is not addressing compulsion of biometrics for other encrypted portions of electronic devices (*e.g.*, biometric security measures on websites, programs, and apps on the electronic device).

To address the nascent question concerning the constitutionality of compelled biometrics, the Court appointed attorney Jarrod Beck as *amicus curiae*.[3]  [DE 1].  Both parties briefed the matter, and the Court heard oral arguments on June 29, 2020.  [DE 4].

## II.   <u>ANALYSIS</u>

### A.   <span style="font-variant: small-caps">Fourth Amendment</span>

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. CONST. amend. IV.  Generally, Fourth Amendment protections extend to areas where a person has a "reasonable expectation of privacy."   *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring).  There is no dispute here that the United States must obtain a warrant to search the electronic devices at issue.  Moreover, and as stated above, the Court has found probable cause to permit the United States to seize and search relevant electronic devices.  The only remaining question, then, is what, if anything, is required of the United States under the Fourth Amendment to compel any individual, **whether a target or bystander**, to provide biometrics incident to the execution of a search warrant for electronic devices.

The law in this area is emerging and entirely unsettled.  The United States and Amicus provided drastically different answers in their briefs.  The government believes that once probable cause has been established for the seizure and search all devices at a given location, law enforcement may compel biometrics from any individual present at the scene.  [DE 2, Page ID# 12].  The United States argues that because the judicial officer will have already found probable cause to conduct the search of those devices, no further inquiry is needed under the Fourth Amendment.  Amicus, unsurprisingly, argues that to compel a biometric scan, the United States

---

[3] The Court thanks Mr. Beck for his submission and participation at oral argument, both of which required considerable effort in resolving the issue before the Court.

must provide additional probable cause to believe that the electronic devices in question belong to the individual.  [DE 3, Page ID# 29].  Because no binding authority addresses this question, the Court looks to analogous case law and persuasive precedents to reach its conclusion.

The United States and Amicus agree that if no security measures prevent access or officers find the electronic devices "unlocked," law enforcement is permitted to search the electronic devices in accordance with the Search Warrant.  Moreover, if a device is locked, the United States is free to review any unencrypted information[4] or wholly circumvent passcode encryption, whether alphanumeric or biometric, through brute force efforts or alternative technology, such as Grayshift's GrayKey.  Such searches are permitted because the undersigned has already determined that probable cause justifies search and seizure of all electronic devices at the Premises, and the Search Warrant sets forth appropriate limitations on the scope of the search.

Therefore, the search of the electronic devices is unquestionably compliant with the Fourth Amendment regardless of whether law enforcement accesses their content because they are unsecured or through technical force.  But where law enforcement seeks to compel individuals at the scene of the Search Warrant execution to provide their biometrics, the search at issue is no longer one of the Premises or electronic devices authorized in the Search Warrant.  Compelled biometrics of "any individual at the [Premises]" as requested in this Search Warrant is beyond the

---

[4] *See United States v. Lopez*, 2016 WL 7370030, at *1, *4 (S.D. Cal. Dec. 20, 2016) ("The Cellebrite device uses software to capture data which has not been deleted and would be visible to any manual user, including contact lists, pictures, and text messages […] The Cellebrite device provided no access to information encrypted, deleted or password protected.").

4

scope of seizing and searching electronic devices, but is more akin to fingerprinting individuals.[5] Consequently, the Court poses two questions. First, is capturing the physical characteristics of an individual, such as a fingerprint, a search? If so, then second, what standard or burden must the government meet to capture such physical attributes of an individual incident to a search warrant?

Fortunately, as to the first question, courts have provided a clear answer. The Supreme Court has unquestionably held that the taking of a fingerprint is a search. *Hayes v. Florida*, 470 U.S. 811, 816–17 (1985). *See also Matter of Search of [Redacted] Washington*, *D.C.*, 317 F. Supp. 3d 523, 531 (D.D.C. 2018); *United States v. Askew*, 529 F.3d 1119, 1158 (D.C. Cir. 2008) (Kavanaugh, J., dissenting) ("The Court's […] decision in *Hayes* plainly considered fingerprinting a search."). In *Hayes*, the Supreme Court held that fingerprints were properly suppressed when the defendant was arrested without probable cause. *Hayes v. Florida*, 470 U.S. 811, 816 (1985); *also Davis v. Mississippi*, 394 U.S. 721 (1969) (holding that fingerprints obtained from a defendant as part of an investigatory detention without probable cause should have been excluded).

Having established that the capturing of physical attributes of a person is a search, the Court next turns to determining the applicable standard. Again, utilizing analogous cases, the courts have provided a clear answer. *Hayes* held "that a brief detention in the field for the purpose of fingerprinting, where there is only **reasonable suspicion** not amounting to probable cause, is [not] necessarily impermissible under the Fourth Amendment." *Id.* (emphasis added). "[T]here is a

---

[5] It is well-settled law that law enforcement officers executing a search warrant can detain everyone (regardless of whether they are a target of the investigation) in the immediate vicinity of the premises to be searched for a reasonably brief period of time. *Bailey v. United States*, 568 U.S. 186, 201-02 (2013) ("Detentions incident to the execution of a search warrant are reasonable under the Fourth Amendment because the limited intrusion on personal liberty is outweighed by the special law enforcement interests at stake."); *United States v. Broussard*, 80 F.3d 1025, 1033 (5th Cir. 1996) (finding "no merit in [defendant's] argument that the officers' actions constituted prolonged or overly intrusive police conduct[,]" where he was detained for fifteen minutes in his driveway during execution of a search warrant at his residence).

diminished interest in 'purely external searches such as fingerprinting,' based on their less intrusive nature." *Matter of Search of [Redacted] Washington, D.C.*, 317 F. Supp. 3d at 531 (quoting *United States v. Kriesel*, 508 F.3d 941, 948 (9th Cir. 2007) and citing numerous other authorities in support). *Hayes* set forth three requirements for obtaining fingerprints from an individual at the scene of a search warrant execution: (1) "there is reasonable suspicion that the suspect has committed a criminal act"; (2) "there is a reasonable basis for believing that fingerprinting will establish or negate the suspect's connection with that crime"; and (3) the procedure must be "carried out with dispatch." *Hayes*, *supra* at 817.

The D.C. District Court is the only court that has thoroughly examined the implications of the Fourth Amendment as applied to compelled biometrics. *Matter of Search of [Redacted] Washington, D.C.*, 317 F. Supp. 3d at 532-33. Upon independent review, this Court reaches the same conclusion as the D.C. District Court: the reasonable suspicion standard set forth in *Hayes* is the most apt Fourth Amendment precedent as applied to biometrics. The D.C. District Court reframed and restated the *Hayes* requirements in a manner more appropriately applied to electronic devices:

> Using *Hayes* as its guide, the Court thus finds that, when attempting to unlock a telephone, computer or other electronic device during the execution of a search warrant that authorizes a search of the device, the government may compel the use of an individual's biometric features, if (1) the procedure is carried out with dispatch and in the immediate vicinity of the premises to be searched, and if, at time of the compulsion, the government has (2) reasonable suspicion that the [individual] has committed a criminal act that is the subject matter of the warrant, and (3) reasonable suspicion that the individual's biometric features will unlock the device, that is, for example, because there is a reasonable suspicion to believe that the individual is a user of the device.

*Id.*[6]  This reasonable suspicion standard is nothing more than an affirmation or continuation of the general reasonableness standard that already governs the conduct of law enforcement when executing a search warrant.  *Dalia v. United States*, 441 U.S. 238, 255 (1979) (Provided a warrant is properly issued, "it is generally left to the discretion of the executing officers to determine the details of how best to proceed with the performance of the search authorized by the warrant— subject of course to the general Fourth Amendment protection 'against unreasonable searches and seizures.'") (internal citations omitted).[7]

At the hearing, the government and Amicus explored a series of hypothetical scenarios related to the instant Search Warrant in discussing what standard should apply to compulsory biometric scans for the Fourth Amendment purposes.  Those hypothetical scenarios proved helpful in crafting this analysis, and, accordingly, the Court incorporates them herein where they elucidate the Fourth Amendment framework applicable to the Search Warrant.  For example, where the United States has reasonable suspicion that a device is controlled by the target, the officers on the scene may compel the target to provide biometric in an attempt to unlock the device.  *See, e.g.*, *Matter of Search of [Redacted] Washington, D.C.*, *supra*.  Such a scenario satisfies the second requirement because the target of a search warrant is clearly suspected of criminal activity, as the

---

[6] The Court does not believe this requirement runs afoul of the Court's holding related to the Fifth Amendment, *infra*.  Reasonable suspicion that an individual's biometric features will unlock the device because the individual is a user of the device could be satisfied by, for example, finding the device in the purse or nightstand of the individual, or because the individual's name is engraved on the device.  This reasonable suspicion determination, necessarily made before the individual acquiesces to a compelled biometric scan, is separate and apart from the fact that the biometric scan itself, while potentially incriminating, is not testimonial under the Fifth Amendment.

[7] The Search Warrant did not present the question of the proper standard to apply when law enforcement seeks to compel use of biometric features to access electronic devices at a time other than during the search of a premises pursuant to a search warrant, and the Court does not address that issue at this time.

government has established by probable cause in the search warrant (much less reasonable suspicion). As to the third requirement, officers reasonably suspecting control may rely on control indicia as supporting a reasonable suspicion that the target's biometrics will unlock the device. So long as the procedure is carried out quickly and near the scene of the search, this scenario would easily meet the requirements of *Hayes* and *Matter of Search of [Redacted] Washington, D.C.* the Court adopts herein.

While this scenario answers the issue of compelled biometrics for the target, the more difficult question is as to a bystander, such as a roommate or even the mailman coincidently delivering a package to the subject premises at the moment the police arrived. As established above, if the government were to compel biometrics of those individuals, it would constitute a search. "Surely it would not be constitutional, for example, for the government to demand the use of anyone's biometric features for the purpose of attempting to unlock such a digital device." *Matter of Search of [Redacted] Washington, D.C.*, 317 F. Supp. 3d at 530. Such a search would not meet the second or third requirements of the reasonable suspicion standard. Similarly, the Court in the Northern District of Illinois rejected a search warrant because the warrant sought "to compel any person who happens to be at the subject premises at the time of the search to give his fingerprint to unlock an unspecified Apple electronic device." *In Re Application for A Search Warrant*, 236 F. Supp. 3d 1066, 1068 (N.D. Ill. 2017). The flaw in that biometric request was the lack of "any specific facts as to who is involved in the criminal conduct linked to the subject premises, or specific facts as to what particular Apple-branded encrypted device is being employed (if any)." *Id*. Although the Northern District of Illinois applied a probable cause standard to the request (*see* the discussion *infra*), the request would also fail under the lower standard set out herein because it fell short of exhibiting "reasonable suspicion that the suspect has committed a

criminal act that is the subject matter of the warrant, and (3) reasonable suspicion that the individual's biometric features [would] unlock the device[.]"  *Matter of Search of [Redacted] Washington*, *D.C.*, 317 F. Supp. 3d 523.  In fact, that same court later permitted a search warrant because it limited the seizure of electronic devices to those that were "linked to the offense or the perpetrator of the offense."  *Matter of Search Warrant Application for the Search of a Townhouse Unit*, No. 2020 WL 1914769, at *3 (N.D. Ill. April 20, 2020).

Returning to the hypothetical roommate or mailman, the three-part test adapted from *Hayes* protects their respective Fourth Amendment rights.  For the roommate, the United States may be able to show reasonable suspicion.  For example, where the United States has probable cause that electronic devices at a certain premises are involved in criminal activity (*e.g.*, receipt of child exploitation images), the Court can foresee how the United States could establish reasonable suspicion for not just the owner of the premises, but also other occupants of the premises.  Yet, for the mailman, the government would not have "reasonable suspicion that the [mailman] has committed a criminal act that is the subject matter of the warrant," and therefore could not compel the mailman to provide his biometrics.  *Matter of Search of [Redacted] Washington*, *D.C.*, 317 F. Supp. 3d at 532-33.

In light of the precedents discussed above, the Court finds that, when attempting to unlock devices during execution of a search warrant, the government may compel an individual's biometrics if there exists reasonable suspicion to believe that the individual has committed a criminal act for which the warrant authorizes an evidentiary search, *and* that the individual's biometric features will unlock the device.  This standard is a reasonable limitation on the scope of the warrant because the search and seizure are directly tied to the offense or its perpetrator, not just anyone who happens to be present during warrant execution, like the mailman.  *See Riley v.*

9

*California*, 573 U.S. 381 (2014) ("As the text of [the Fourth Amendment] makes clear, the ultimate touchstone of the Fourth Amendment is reasonableness.") (internal quotations omitted).

The Court rejects the probable cause standard for compulsory biometric scans adopted in *In Re Application for A Search Warrant*, 236 F. Supp. 3d 1066 and *Matter of Residence in Oakland, California*, 354 F. Supp. 3d 1010 (2019), and championed by Amicus.  The Supreme Court has not required this higher standard for fingerprinting, which is the framework the Court adopts for biometric scans.  *See Davis*, 394 U.S. at 727 (Due to the "unique nature of the fingerprinting process," a search may comply with Fourth Amendment requirements without "probable cause in the traditional sense."); *see also Hayes*, 470 U.S. 811.  The *Oakland* decision implies that because the request for compelled biometric scans is in the search warrant, the probable cause standard must apply:

> [T]he Application does not establish sufficient probable cause to compel any person who happens to be at the Subject Premises at the time of the search to provide a finger, thumb or other biometric feature to potentially unlock any unspecified digital device that may be seized during the otherwise lawful search.

*Oakland*, 354 F.Supp.3d at 1014.  This is conclusion is logically appealing but does not comport with the Supreme Court precedent in *Davis* and *Hayes*.  Nor did the court in *Oakland* cite to any case law or even analogous case law supporting the application of a probable cause standard.  In *In Re Application for A Search Warrant*, the court in the Northern District of Illinois reached a conclusion similar to this Court's finding that "authority to seize any individual at the subject premises and force the application of their fingerprints as directed by government agents" as requested in the search warrant was not "justified based on the facts articulated."  236 F. Supp. 3d

at 1070.  Yet still, that Court also omits any case law establishing why probable cause is necessary for fingerprinting or any other analogous circumstance.[8]

In the matter currently before the Court, the supporting affidavit establishes probable cause for the search and seizure of the electronic devices located at the Premises.  However, the United States requests permission to "compel all individuals present" at the Premises to provide biometrics, despite the affidavit identifying only one Target.  In fact, the affidavit emphasizes numerous facts to establish that the Target controls all of the electronic devices on the Premises, inherently eliminating other parties as potential users of the electronic devices.  The affidavit does not mention any other parties that may occupy the Premises or have access to the electronic devices by means of biometrics.  In other words, the affidavit's efforts to establish the Target's control of the electronic devices undercuts the request to obtain biometrics from non-Target individuals.

Accordingly, the Court concludes that the United States may only compel individuals present during warrant execution to provide biometric markers to unlock electronic devices where the United States has reasonable suspicion that such an individual has committed a criminal act that is the subject matter of the warrant, and reasonable suspicion that the individual's biometrics

---

[8] In reaching its conclusion, the Northern District of Illinois relied on *United States v. Guevara-Martinez*, where the Eighth Circuit suppressed fingerprints obtained "by exploiting [defendant's] unlawful detention." 262 F.3d at 755 (8th Cir. 2001).  That case turned on the defendant's unlawful removal from his home and subsequent detention at the jail; the Eighth Circuit specifically recognized that fingerprints obtained during "a brief detention in the field unsupported by probable cause" enjoys reduced Fourth Amendment protection.  *Id*. at 756.

will unlock the device.[9]   Thus, the Court finds the biometric request in the Search Warrant is overbroad.  Future government requests for authorization to compel biometrics as part of a search warrant, whether it be a revised search warrant in the current case or future search warrants before this Court, must comply with the standard set forth above.

**B.    FIFTH AMENDMENT**

The Fifth Amendment provides, in relevant part, that "[n]o person ... shall be compelled in any criminal case to be a witness against himself."  U.S. CONST. amend V.  In addition to Fourth Amendment concerns discussed above, the Court must determine if the Fifth Amendment's privilege against self-incrimination applies to compulsory biometric authentication.  Few courts— none of them federal appellate courts—have addressed the issue.  Of those, no clear consensus has emerged.  *See, e.g.*, *In the Matter of Search Warrant Application for [Redacted Text]*, 279 F. Supp. 3d 800, 801 (N.D. Ill. 2017) ("[T]he Court holds that requiring the application of the fingerprints to the sensor does not run afoul of the self-incrimination privilege because that act does not qualify as a testimonial communication."); *Matter of Residence in Oakland, California*, 354 F. Supp. 3d 1010 (denying warrant application because biometric features used to potentially unlock electronic device are testimonial under Fifth Amendment); *Seo v. State*, --- N.E.3d ---, 2020 WL 3425272 (Ind. June 23, 2020) (finding compelled biometrics testimonial); *contra Matter of Search of [Redacted] Washington*, *D.C.*, 317 F. Supp. 3d 523 (granting warrant application because

---

[9] "Law enforcement is not absolved of its responsibility to act reasonably in executing a warrant merely because the government has received court authorization to compel the use of an individual's biometric features.  Circumstances that obtain during the execution may change the calculus, making an otherwise reasonable search unreasonable."  *Matter of Search of [Redacted] Washington, D.C.*, 317 F. Supp. 3d at 540, n.7.  If the individuals refuse to cooperate, the Court requires resolution of the matter through contempt proceedings through the All Writs Act as opposed to the use of physical force.  *See, e.g.*, *United States v. Apple MacPro Computer*, 851 F.3d 238 (3d Cir. 2017) (upholding the use of contempt proceedings by a magistrate judge due to a target's failure to comply with a court order).

compelled use of subject's biometric features was non-testimonial under the Fifth Amendment); *Matter of single-family home & attached garage*, 2017 WL 4563870, at *9 (N.D. Ill. Feb. 21, 2017) (Finnegan, J.), *rev'd by* 279 F. Supp. 3d 800 (N.D. Ill. 2017) (denying warrant application to compel four individuals to unlock unspecified Apple devices during the search of subject premises because fingerprint unlock was compelled act of production).

Utilizing the existing Fifth Amendment framework and considering the opinions of the state and federal courts that have analyzed the issue, the Court concludes that there is no Fifth Amendment privilege against providing biometrics so that law enforcement may access an electronic device.

### 1.    Standard for Fifth Amendment Protection

The Fifth Amendment protection against being "compelled in any criminal case to be a witness against himself" is comprised of three components.  *United States v. Hubbell*, 530 U.S. 27, 34 (2000).  The privilege only applies where there is (1) compelled, (2) incriminating, (3) testimony.[10]  All three must be present for Fifth Amendment protection.  The Supreme Court discussed these "certain propositions that are not in dispute":

> The word "witness" in the constitutional text limits the relevant category of compelled incriminating communications to those that are "testimonial" in character.  As Justice Holmes observed, there is a significant difference between the use of compulsion to extort communications from a defendant and compelling a person to engage in conduct that may be incriminating.  Thus, even though the act may provide incriminating evidence, a criminal suspect may be compelled to put on a shirt, to provide a blood sample or handwriting exemplar, or to make a recording of his voice.  The act of exhibiting such physical characteristics is not the

---

[10] Though not a part of the Fifth Amendment protection, tangentially related is the requirement that "a witness who desires the protection of the privilege . . . must claim it at the time he relies on it."  *Salinas v. Texas*, 570 U.S. 178, 183 (2013) (quotation marks and citations omitted).  Because the Court finds that the Fifth Amendment does not protect compelled use of biometrics, the Court need not inquire when or how a target would claim the privilege in the search warrant context.

same as a sworn communication by a witness that relates either express or implied assertions of fact or belief.

*United States v. Hubbell*, 530 U.S. 27, 34–35 (2000) (footnotes and citation omitted).  *Hubbell* made clear that these are three separate inquiries; just because something may be incriminating and compelled "does not clothe such required conduct with the testimonial privilege."  *Id*.; *accord In the Matter of a Search Warrant Application for the Cellular Telephone in United States v. Barrera*, 415 F. Supp. 3d 832, 836 (N.D. Ill. 2019) ("But if a *compelled* act is not *testimonial*, and therefore not protected by the Fifth Amendment, it cannot become protected simply because it will lead to *incriminating* evidence.") (emphasis in original).

Forcing a target to provide his biometrics to allow law enforcement to access a device is unquestionably compelled conduct.  The Court must assume, for the sake of this opinion, that there is incriminating evidence on the devices to be searched; otherwise this inquiry is moot.  *Hiibel v. Sixth Judicial Dist. Court of Nevada, Humboldt County*, 542 U.S. 177, 189 (2004) ("The Fifth Amendment prohibits only compelled testimony that is incriminating.").[11]

Thus, the remaining inquiry is, under the existing legal framework, is compelled production of biometrics testimonial and therefore protected by the Fifth Amendment?

2.    <u>**Act of Production Doctrine**</u>

For Fifth Amendment purposes, "in order to be testimonial, an accused's communication must itself, explicitly or implicitly, relate a factual assertion or disclose information."  *Doe v. United States*, 487 U.S. 201, 210 (1988).  "It is the 'extortion of information from the accused,' the attempt to force him 'to disclose the contents of his own mind,' that implicates the Self–

---

[11] Moreover, the Court already determined there is probable cause to believe the fruits or instrumentalities of a crime may be found on the electronic devices.

Incrimination Clause." *Id*. at 211 (citing *Couch v. United States*, 409 U.S. 322, 328 (1973); and *Curcio v. United States*, 354 U.S. 118, 128 (1957), respectively).

The Fifth Amendment's protections, however, are not limited to verbal or written communications. In *Fisher v. United States*, the Supreme Court clarified the contours of the "act of production" doctrine. 425 U.S. 391 (1976). The doctrine provides that the act of producing items, such as documents, can be testimonial where such production reveals the contents of the target's thoughts or impressions. In *Fisher*, the Supreme Court addressed whether a taxpayer must produce tax documents in response to a subpoena issued by the United States despite his objections that such a production would violate his Fifth Amendment rights against self-incrimination. The Court held voluntarily-prepared tax documents could not be "said to contain compelled testimonial evidence" but that the "act of producing evidence in response to a subpoena nevertheless has communicative aspects of its own, wholly aside from the contents of the papers produced. Compliance with the subpoena tacitly concedes the existence of the papers demanded and their possession or control by the taxpayer[.]" *Fisher v. United States*, 425 U.S. 391, 410 (1976). The *Fisher* court recognized that the "elements of compulsion are clearly present" but whether the act of production is both "testimonial" and "incriminating" may "depend on the facts and circumstances of particular cases or classes thereof." *Id*. Thus, the so-called "act of production"

15

doctrine was born, recognizing that acts of production have testimonial aspects that may be protected by the Fifth Amendment, depending on the fact and circumstances of the case.[12]

Following *Fisher*, the Supreme Court revisited the act of production doctrine three more times with each result highly case specific. For example, when the United States subpoenaed certain documents from a target, the Supreme Court found such acts of production testimonial and deserving of protection under the Fifth Amendment. *United States v. Doe*, 465 U.S. 605 (1984) ("*Doe I*"); *Hubbell*, 530 U.S. 27. Compliance with a subpoena "compels the holder of the document to perform an act that may have testimonial aspects and an incriminating effect[,]" namely that the target admits the existence of the documents, that they were in his possession, and that they were authentic. *Doe I*, 465 U.S. at 612-13 (citing *Fisher*, 425 U.S. 391).

> It was unquestionably necessary for respondent to make extensive use of "the contents of his own mind" in identifying the hundreds of documents responsive to the requests in the subpoena. **The assembly of those documents was like telling an inquisitor the combination to a wall safe, not like being forced to surrender the key to a strongbox**.

*Hubbell*, 530 U.S. at 43 (internal citations omitted; emphasis added). This lock versus key distinction was born from Justice Stevens' dissent in *Doe I* [13] and has become the prevailing

---

[12] The Court would be remiss to omit that while the Supreme Court in *Fisher* clarified the act of production doctrine, it also created an exception to that doctrine: the foregone conclusion. For the foregone conclusion exception to apply, the government must already know what the evidence is and where it will be found. The entire purpose of a search warrant is usually to search for evidence that the government believes might exist but does not yet have proof of its existence, location, or what specific evidence it might find. The Court does not foreclose the possibility that the foregone conclusion exception could apply in a search warrant request for compulsory biometric authentication. However, those facts are not before the Court, and the Court does not address it herein. In the search warrant at issue, the government has established probable cause to believe evidence of a crime will be found on electronic devices at the subject premises, but does not have specific information as to what that might be or where it will be found. Like the recent decision *Seo*, 2020 WL 3425272, this Court finds the foregone conclusion exception inapplicable under the current facts.

[13] An individual "may in some cases be forced to surrender a key to a strongbox containing incriminating documents, but I do not believe he can be compelled to reveal the combination to his wall safe—by word or deed." *Doe I*, 487 U.S. at 219 (Stevens, J., dissenting).

analysis in this area of the law.  *See, e.g., Matter of Search of [Redacted] Washington, D.C.*, 317 F. Supp. 3d at 535 ("the compelled use of the Subject's biometric features is far more akin to the surrender of a safe's key than its combination."); *Matter of Search Warrant Application for [redacted text]*, 279 F. Supp. 3d at 806 ("The same principle applies here: a person generally cannot be compelled to disclose the passcode (like the safe's combination) but can be compelled to provide the fingerprint (like the key to the safe)"); *Barrera*, 415 F. Supp. 3d at 839 ("the Court holds that the biometric unlock procedure is more akin to a key than a passcode combination.").

Conversely, when the United States sough bank records directly from a target's banks through a compelled consent document, the Court rejected the application of the act of production doctrine.  *Doe*, 487 U.S. 201 ("*Doe II*").[14]  The Supreme Court concluded that the consent form did "not acknowledge that an account in a foreign financial institution is in existence or that it is controlled by petitioner" or "indicate whether documents or any other information relating to petitioner are present at the foreign bank" or "even identify the relevant bank." *Id*. at 215.  Because the Court was compelling Doe to sign the consent form, his execution of it "sheds no light on his actual intent or state of mind." *Id*. at 216.  Thus, the Court found that signing the consent form was nontestimonial and not protected by the Fifth Amendment privilege.

### 3.   Pursuant To Controlling Supreme Court Case Law, Compelled Biometrics Are Not Testimonial

From these binding precedents, the Court discerns that the act of production doctrine applies only where a target must produce documents in a manner that requires a testimonial and communicative act, for example, where the responding party must "make extensive use of 'the contents of his own mind' in identifying the hundreds of documents responsive to the requests in

---

[14] The Court notes the *Doe* cases are not related other than in the legal subject matter they discuss.  However, due to the similarity in case styles, the Court has designated them *Doe I* and *Doe II*, based on chronology.

17

the subpoena." *Hubbell*, 530 U.S. at 43.   The Supreme Court continues to draw a distinction between a combination lock, *i.e.*, a passcode, and a key.   Because the Supreme Court draws this distinction, this Court must do the same.   Thus, the Court is left with only one conclusion: a face, finger, or iris is a physical item that can be physically produced without any mental impressions, communication, or admission of *mens rea* from the target.   Stated another way, the Court finds biometric markers akin to a key in line with *Doe II*.   A passcode, on the other hand, is no different from the combination lock on Justice Stevens' imagined safe as discussed in *Doe I* and *Hubbell*.

Requiring a target to look at or place their finger on an electronic device "sheds no light on his actual intent or state of mind."   *Doe I*, 487 U.S. 201, 216 (1988).   As two district courts have noted, "the application of a finger to the home button on a iPhone 'can be done while the individual sleeps or is unconscious,' and thus does not require any revelation of information stored in a person's mind."   *Matter of Search Warrant Application for cellular telephone in United States v. Barrera*, 415 F. Supp. 3d 832, 839 (N.D. Ill. 2019) (citing *Matter of White Google Pixel 3 XL Cellphone in a Black Incipio Case*, 398 F. Supp. 3d 785, 794 (D. Idaho 2019)).[15]   Although the use of biometric technology might require some physical action from a conscious and cooperating individual, it requires nothing more than the person looking in a particular direction or placing their body parts in a certain place.   The only thought that can be inferred and attributed to the person is that he/she affirmatively looked at a phone screen, for example.   This is no more inculpatory than Doe in *Doe II* signing the bank consent forms.   In so doing, Doe in *Doe II* may have admitted he could write and sign his name, but nothing further.

---

[15] At oral argument, the United States went one step further, arguing that a fingerprint scan requires absolutely nothing from the individual being scanned, such that even a dead man's finger could be applied to a device to unlock it for investigatory purposes.   Of course, a deceased person has no Fifth Amendment rights to assert.   But this extreme example is illustrative of the academic premise.

The use of biometrics might be compelled and might also be incriminating, but neither of these things make it testimonial. "When deciding whether an act is testimonial or not, the governing case law simply does not take into account the power or immediacy of the incriminating inference acquired from the physical characteristic." *In re Search Warrant Application for [redacted text]*, 279 F. Supp. 3d at 805. *See also Hubbell*, 530 U.S. at 34–35 (holding that just because something may be incriminating and compelled "does not clothe such required conduct with the testimonial privilege."). The Court disagrees with Amicus that providing biometrics is an act that implies that the person has dominion and control over the electronic device and its contents. [DE 3-1, Amicus Brief, at Page ID # 35]. "As Justice Holmes observed, there is a significant difference between the use of compulsion to extort communications from a defendant and compelling a person to engage in conduct that may be incriminating." *Hubbell*, 530 U.S. at 34–35 (footnotes and citation omitted). Again, this can be compared to Doe in *Doe II* signing the consent form. The consent form may have ultimately led to the discovery of incriminating evidence obtained from another source—evidence that the prosecution could not have obtained without Doe's signature on the form. The use of biometrics may ultimately lead to incriminating evidence, but one does not hold thoughts or mental states in one's thumbprint. "As explained by the *Doe [II]* Court, as long as the government must locate the evidence on its own (as it had to with

the obtention of bank records in *Doe [II]*), the act of signing the consent has no testimonial significance." *Barrera*, 415 F. Supp. 3d at 840 (citing *Doe II*, *supra* at 215-16).[16]

Moreover, this Court finds it instructive and persuasive that the Supreme Court has sanctioned many variations of presenting a physical characteristic to law enforcement as nontestimonial and therefore undeserving of Fifth Amendment protections.  For example, a defendant's "testimonial capacities were in no way implicated; [and] indeed, his participation . . . was irrelevant to the results of" a blood alcohol test where the blood sample was taken over his objection.  *Schmerber v. California*, 384 U.S. 757, 765 (1966).  Because "the prohibition of compelling a man in a criminal court to be witness against himself is a prohibition of the use of physical or moral compulsion to extort communications from him, not an exclusion of his body as evidence when it may be material[,]" a court can compel a defendant to try on a blouse to see if it fits.  *Holt v. United States*, 218 U.S. 245, 252–53 (1910).  Likewise, neither handwriting nor voice exemplars are protected by the Fifth Amendment.  *See Gilbert v. California*, 388 U.S. 263, 266–

---

[16] To date, all Supreme Court cases discussing the act of production doctrine are in the context of a subpoena, not a search warrant.  This distinction has been lost in recent Fifth Amendment jurisprudence addressing compulsory biometric scans.  Regardless, the Court is not suggesting that search warrants do not have Fifth Amendment protections against self-incrimination; rather, they clearly do.  The act of production, however, requires an affirmative act that necessarily occurs in complying with a subpoena, but not necessarily when one is the subject of a search warrant.  The clearest example of this is in *Hubbell*, where compliance with the subpoena "was tantamount to answering a series of interrogatories asking a witness to disclose the existence and location of particular documents fitting certain broad descriptions . . . the functional equivalent of the preparation of an answer to either a detailed written interrogatory or a series of oral questions at a discovery deposition."  530 U.S. at 41–42.  The act of production doctrine may apply narrowly in the search warrant context where law enforcement seeks, via Rule 41 or the All Writs Act, to require the target to "tacitly concede" something through his actions.  Where the government has sought to compel targets of search warrants to enter a device's passcode, the Courts have rejected it as an act of production entitled to Fifth Amendment protection.  But for the reasons stated herein, case law demands that the act of submitting to a biometric scan (where the device and body part is chosen by law enforcement) is not a testimonial act of production like entering a passcode.

67 (1967) ("One's voice and handwriting are, of course, means of communication. It by no means follows, however, that every compulsion of an accused to use his voice or write compels a communication within the cover of the privilege. A mere handwriting exemplar, in contrast to the content of what is written, like the voice or body itself, is an identifying physical characteristic outside its protection."); *accord United States v. Dionisio*, 410 U.S. 1, 7 (1973) (compelled "voice recordings were to be used solely to measure the physical properties of the witnesses' voices, not for the testimonial or communicative content of what was to be said[,]" and therefore would not violate the privilege against self-incrimination).

Although the Court does not find these cases, alone, determinative for the issue at bar, the Court agrees with the D.C. District Court that "there will be no revelation of the contents of the Subject's mind with the procedure proposed by the government for collection of the Subject's biometric features. . . . Indeed, the use of the fingerprint is much more like the government's compelled use of other 'physical characteristics' of criminal suspects that courts have found non-testimonial even when they are used for investigatory purposes rather than solely for identification." *Matter of Search of [Redacted] Washington, D.C.*, 317 F. Supp. 3d at 536.

4.  **Courts Prohibiting Compelled Biometrics Ignore Precedent**

Where other district courts have prohibited compelled biometrics, they have favored a pragmatic (rather than legalistic) approach. In *Matter of Residence in Oakland, California*, 354 F. Supp. 3d 1010, 1016 (N.D. Cal. 2019) ("*Oakland*"), the government submitted a search warrant application similar to the one at issue here. The application requested "the authority to seize various items […] including electronic devices, such as mobile telephones and computers" and "the authority to compel any individual present at the time of the search to press a finger (including a thumb) or utilize other biometric features, such as facial or iris recognition, for the purposes of unlocking the digital devices found in order to permit a search of the contents as authorized by the

21

search warrant." *Id*. at 1013.  The *Oakland* court denied the request, concluding that the proposed use of biometrics to unlock a device was sufficiently testimonial for Fifth Amendment protection. *Id*. at 1014-16.  The Court reasoned that "a finger, thumb, or other biometric feature may be used to unlock a device in lieu of a passcode . . . [and] serve the same purpose of a passcode, which is to secure the owner's content, pragmatically rendering them functionally equivalent." *Id*. at 1015.

The *Oakland* decision and its progeny reason that because passwords or locks are protected by the Fifth Amendment and biometrics are a substitute for a passcode, then biometrics are thereby protected.  *See*, *e.g.*, *United States v. Wright*, 431 F. Supp. 3d 1175, 1188 (D. Nev., 2020) (the forceable "unlocking of the phone with Defendant's face was a testimonial act" implicating Fifth Amendment protections); *United States v. Warrant*, 2019 WL 4047615, at *3 (N.D. Cal. 2019) ("this Court disagrees with those courts that have concluded that compelling application of a biometric feature is no different than compelling the provision of non-testimonial physical evidence.").  Amicus repeatedly argued that biometrics are not only used in lieu of a passcode, but are used in conjunction with passcodes.  Electronic devices generally cannot be programmed to provide access with a biometric unless the user has first assigned the device a passcode, and as the *Oakland* Court noted, "there are times when the device will not accept the biometric feature and require the user to type in the passcode to unlock the device." *Id*.  Both the holding in *Oakland* and Amicus's argument are premised on the well-settled law that passcodes deserve Fifth Amendment protections.  *See*, *e.g.*, *In re Grand Jury Subpoena Duces Tecum Dated March 25, 2011*, 670 F.3d 1335, 1345 (11th Cir. 2012).

This Court does not dispute that passcodes are afforded Fifth Amendment protections.  Yet, biometrics are not passcodes.  The decision in *Oakland* and related cases simply bypasses the Supreme Court holdings in *Fisher*, *Doe I*, *Doe II*, *Hubbell*, and related decisions like *In re Grand*

*Jury Subpoena Duces Tecum Dated March 25, 2011*, that repeatedly emphasize that the act of production doctrine only applies where the act "make[s] extensive use of 'the contents of [the target's] own mind.'" *Hubbell*, 530 U.S. at 43; *see also Couch*, 409 U.S. at 328; and *Curcio v. United States*, 354 U.S. 118, 128 (1957).[17]  For example, the Eleventh Circuit specifically agreed with the controlling Supreme Court cases cited herein that "the Fifth Amendment privilege is not triggered where the Government merely compels some physical act, *i.e.* where the individual is not called upon to make use of the contents of his or her mind." *In re Grand Jury Subpoena Duces Tecum Dated March 25, 2011*, 670 F.3d at 1345.  "Requiring [the target] to use a decryption password is most certainly more akin to requiring the production of a combination because both demand the use of the contents of the mind, and the production is accompanied by the implied factual statements noted above that could prove to be incriminatory[.]" *Id*. at 1346.

Although the conclusion reached in *Oakland* and others has practical justifications, the decision never resolves how the physical act of placing your finger on a screen, for example, communicates the mental thoughts and impressions of a target to convert such actions into testimonial acts.  Rather than address this requirement, *Oakland* and similar decisions focus on the fact that the act of providing biometrics may result in incriminating evidence or allow the government to draw obvious inferences.  In the *Oakland* court's view, "the act [of providing a biometric] concedes that the phone was in the possession and control of the suspect, and authenticates ownership or access to the phone and all of its digital contents[,]" and therefore it is

---

[17] Amicus pressed the Court to consider that biometrics do not just "lock" a device but typically encrypt a device, such that the user necessarily engaged in a purposeful, multi-step process to secure his or her device from intrusion.  The Court does not dispute that biometrics function in this manner, but the user's state of mind when he or she creates the biometric authentication are not pertinent to the inquiry of what the user communicates when forced to provide biometrics to either unlock or decrypt the device.

a protected testimonial act of production just like stating a passcode would be. *Id.* This false equivalence conflates the "testimonial" and "incriminating" requirements of the Fifth Amendment's self-incrimination clause in several respects and is premised on inaccurate assumptions about technology and oversimplification of the law. As stated above, "[w]hen deciding whether an act is testimonial or not, the governing case law simply does not take into account the power or immediacy of the incriminating inference acquired from the physical characteristic." *In re Search Warrant Application for [redacted text]*, 279 F. Supp. 3d at 805. *See also Hubbell*, 530 U.S. at 34–35.

The *Oakland* court erroneously believes that "the act of unlocking a phone with a finger or thumb scan far exceeds the 'physical evidence' created when a suspect submits to fingerprinting to merely compare his fingerprints to existing physical evidence (another fingerprint) found at a crime scene, because there is no comparison or witness corroboration required to confirm a positive match." *Oakland*, 354 F. Supp. 3d at 1016. This is simply untrue, as anyone who has tried to use their thumb or face to access someone else's iPhone can attest. If the device "confirm[s] a positive match[,]" the device permits access. If it does not "confirm a positive match[,]" it does not permit access. The fact that this happens in a split second—as opposed to the amount of time it takes to put a fingerprint through a biometric database or have an expert conduct an analysis—is of no consequence in the Fifth Amendment analysis. The Northern District of Illinois reached the same conclusion:

> When deciding whether an act is testimonial or not, the governing case law simply does not take into account the power or immediacy of the incriminating inference acquired from the physical characteristic. If the act does not inherently contain a communication from the person, then no testimony has been obtained from the person. In essence, applying the fingerprint to the Touch ID sensor is no different than watching someone put on a shirt to see—immediately—if it fits or listening to someone speak in a live lineup and deciding—immediately—whether the voice matches the suspect's. And the speed, or relative lack of speed, in obtaining the

results is not a dividing line, even as fingerprint and blood-sample analyses have sped up in recent years. The fingerprint seizure itself contains no communication, just as those other physical characteristics do not themselves communicate anything.

*Matter of Search Warrant Application for [redacted text]*, 279 F. Supp. 3d at 805.

The *Oakland* case further asserted that "a successful finger or thumb scan confirms ownership or control of the device[.]" *Oakland*, 354 F. Supp. 3d at 1016. This is also untrue. A successful biometric scan provides the government with powerful evidence that that individual has owned and/or controlled that device at some point. However, it does not rule out the possibility that another person currently owns and controls the device. Electronic devices can often be programmed to use multiple individuals' biometrics and a passcode, all at the same time. For crimes such as the one at issue here, possession of child pornography, proving possession of the device on which evidence is found may tend to prove an element of the crime. But a successful biometric scan, alone, does not definitively prove ownership or control; nor is it testimony "that he or she currently has some level of control over or relatively significant connection to the phone and its contents." *Oakland*, 354 F. Supp. 3d at 1016. Again, a very strong inference may be drawn that the individual "has accessed the phone before," but the individual, by merely looking at a device or placing his or her finger on it, did not communicate any knowledge or mental state from his mind to law enforcement.

Finally, the *Oakland* court warned that when a device is accessed with a biometric scan, "the authentication of its contents cannot be reasonably refuted." *Id*. This, too, is false. A successful biometric scan provides no admission or testimony about the existence of documents on the device. Once again, the distinction between whether an action is testimonial and whether it is incriminating controls. The D.C. District Court illustrated this point, reiterating the lock and key analogy:

The fact that the possessor of the key has a more credible counter-argument—that a key may be borrowed, found, or stolen, an argument that would be difficult to maintain regarding a fingerprint—speaks to the incriminatory nature of the possession of the object: that possessing a borrowed, found, or stolen key to a strongbox may have a weaker incriminatory consequence than would bearing a fingerprint that opens a device. But the notion that one might have more incriminatory power than the other is not relevant to whether the compelled use of a fingerprint is any more testimonial than the compelled use of a key; "the requirement that the compelled communication be 'testimonial' " is "separate [from the] requirement that the communication be 'incriminating.'"

*Matter of Search of [Redacted] Washington, District of Columbia*, 317 F. Supp. 3d at 536 (quoting *Doe II*, 487 U.S. at 208 n.6).  *See also Barrera*, 415 F. Supp. 3d at 836 ("[T]he authenticity of the material obtained as a result of the biometric unlock procedure does not rest on the shoulders of the compelled party.  Rather, in the context of data obtained from search warrants, courts routinely rely upon the government's chain of custody testimony to establish the foundation for the authenticity of the items seized from a search.  The fact that an individual is able to unlock a phone with a physical characteristic does not automatically make each individual set of data, such as photos, videos, notes, email, texts, etc., immediately authentic.").  Once more, multiple individuals may have access to a device; files may exist on a device because it is infected with malware, spyware, or third-party applications.  Depending on the crime alleged, the government may have to prove possession of the contents of the device as well as the *mens rea* connected to those crimes.  Files found on a device accessed by a target's biometrics does not automatically authenticate those files with any greater legal effect than files found in a target's desk drawer accessed by a key on the target's keyring.

In conclusion, although one of our sister courts deemed it "absurd" that "whether a defendant would be required to produce a decrypted drive would hinge on whether he protected that drive using a fingerprint key or a password composed of symbols[,]" that is the potentially sophistic conclusion the Court must reach under the prevailing precedent.  *United States v.*

26

*Spencer*, 2018 WL 1964588, at *2 (N.D. Cal. April 26, 2018).  This outcome does not necessarily reflect the pragmatic use and prevalence of biometrics as a proxy for passcodes in day-to-day twenty-first century life, but it does reflect the current state of the law.  The Court stands by the unambiguous distinction in both the law and common sense between something intangibly held in the most sacred of places—one's own mind—and an immutable physical characteristic.  The Court agrees with Amicus and the Northern District of California that "biometric features serve the same purpose of a passcode, which is to secure the owner's content, pragmatically rendering them functionally equivalent." *Oakland*, 354 F. Supp. 3d at 1015.  Where the Court disagrees, however, is that this *functional* equivalency amounts to *legal* equivalency.

In *Riley*, Justice Alito cautions courts not to "mechanically apply" a predigital-age constitutional rule to digital devices. *Riley v. California*, 573 U.S. 373, 406 (2014).  Unfortunately, where technology has outpaced the legal precedent, lower courts have little choice but to operate within the framework available if *stare decisis* is to be respected.  *Riley* and *Carpenter*, discussing Fourth Amendment privileges in the context of warrantless searches, does not negate the Supreme Court's holdings in *Doe II* or other related cases.  The Court, then, is forced to analyze the existing case law and forecast—or perhaps, guess—how higher courts will apply existing law to novel technology.  The nature of the inquiry means that federal district courts—specifically magistrate judges issuing search warrants—find themselves alone in the unmapped territory where old law and new technology intersect.  The Court recognizes the law in this area is emerging and may change as the courts "catch up" with technology; this Memorandum Opinion merely reflects the outcome current Fifth Amendment jurisprudence counsels.  "[E]ven when presented with legal questions impacted by changing technology that has triggered significant modifications of individuals' behavior, a lower court cannot ignore or rewrite the constitutional principles the

Supreme Court has articulated.  Rather, this Court's job is to interpret and apply those precedents as faithfully as possible."  *Matter of Search of [Redacted] Washington, D.C.*, 317 F. Supp. 3d at 539–40.

### III.    <u>CONCLUSION</u>

Accordingly, for the reasons stated herein and the Court being sufficiently advised, the Court **STRIKES** the request for compelled biometrics in the Search Warrant 5165 as overly broad and in violation of the Fourth Amendment.  The Search Warrant fails to qualify that compulsion of biometrics must be supported by a finding of reasonable suspicion both that (1) the individual has committed a criminal act that is the subject matter of the warrant, and (2)  the individual's biometric features will unlock a device approved for search in the Search Warrant.  Going forward, search warrant applications pertaining to the search and seizure of devices that request permission the compel the use of biometrics should address the above analysis.

This the 2nd day of July, 2020.



Signed By:
<u>Matthew A. Stinnett</u>
United States Magistrate Judge